## THE PEOPLE *ex rel.* SEALE *v.* DOANE.

ON mandamus against the Sheriff by a purchaser at a Sheriff's sale of property as belonging to the city of San Francisco on judgment and execution against the city for a deed, the value of the interest sold, or probably the leviable quality of the title, could not be enquired into—the city not being a party.

Where the Board of Supervisors of the city and county of San Francisco at a special meeting pass a resolution authorizing Burr, as President of the Board, to redeem certain city property sold at Sheriff's sale, and the resolution does not authorize the expenditure of any money on the part of the city and county, and was not published, with ayes and noes, in a newspaper before final action, according to the sixty-sixth section of the Consolidation Act of 1856: *Held,*

Scale *v.* Doane.

that such resolution was sufficient authority to the President to make the re-
demption on the part of the city and county, even though the money for that
purpose came from private hands.

*Held, further,* that whether the money tendered by Burr for redemption was his
own or the money of the city and county, is matter between them alone.

Third persons have no right to inquire from what source a redemptioner gets the
money he proposes to use to effect a redemption he is entitled to make.

Where a party purchased property at Sheriff's sale, and on an attempt by the owner
to redeem from him, he objects that the amount tendered for redemption is not
enough, because not including certain taxes he has paid on the property : *Held,*
that he must show that the taxes were legally assessed and paid, and were a
charge on the property before or at the time of the redemption ; and the Tax
Collector's receipts are not sufficient proof.

APPEAL from the Twelfth District.

The judgment under execution upon which the property in ques-
tion was sold, was rendered in favor of *B. T. Hanford* v. *The
City of San Francisco,* March 31st, 1856.   Execution was issued
on this judgment on the first day of February, 1858, and the
property sold thereunder by the Sheriff on the twenty-fifth of the
same month, and a certificate of sale given relator and others—
there being several purchasers.   Burr, as President of the Board
of Supervisors, Aug. 25th, 1858, paid seven hundred and ninety-
five dollars to the Sheriff, claiming to redeem in behalf of the city
and county of San Francisco from the sale made to plaintiff and
others.   And on the same day, he served a written notice upon the
Sheriff, to the effect, that the city and county, as judgment debtor
and successor in interest " has this day redeemed all of those lots,"
etc., describing them, and stating the sum paid as redemption
money for each purchaser.   This notice was signed : " The city and
county of San Francisco, by E. W. Burr, President Board of Sup-
ervisors."

The Resolution, No. 167, under which Burr acted was passed
Aug. 16th, 1858, and is as follows :

" *Resolved,* that the action of the President of this Board in
the redemption of property heretofore sold under judgments against
the city of San Francisco be, and the same is hereby confirmed,
and he is hereby authorized on behalf of the city and county of
San Francisco, to redeem any and all property of said city and

county heretofore sold under judgments against the city of San Francisco."

Further facts appear in the opinion of the Court.    Defendant appeals.

*D. Lake*, for Appellant.

I.    As to the person making the redemption, " the judgment debtor or his successor in interest " possesses the right.    (Pr. Act, sec. 230.)

Here the judgment debtor was a corporation.    Its acts must be through its officers.    And were it not for the decision of the Court in the case of *Thorne* v. *Hays*, (4 Cal. 127) we should, upon the authorities there presented by the appellants, say that the President of the Board of Supervisors, by virtue of his office and without other authority, had the right to redeem.    (Brief of Hepburn, Thomas & Hoge, 4 Cal. 129.)

The Redemption Law was made for the benefit of the debtor. The purchaser by his certificate does not get the land ; he simply becomes the creditor of the judgment debtor to the amount of his purchase money, and has a lien upon the land sold for the amount of his debt, with a liberal interest payable in six months.    No title passes.    If the money, with interest, be paid, the title remains in the judgment debtor, and needs no conveyance ; his title is perfect upon payment of the debt.    As against the judgment debtor, the purchaser therefore holds only a debt, and the redemption, so called, is but the payment of that debt.    (Opinion of Heydenfeldt, J., 4 Cal. 169, 170 ; *Wolcott* v. *Hepburn*, 10 Pet. 1 ; *Patterson* v. *Brindle*, 9 Watts, 101.)

As it is really but the payment of a debt, when made by the judgment debtor, the principle is the same as the tender of money in payment of a debt, and the law settling the question as to who can make a lawful tender may be invoked.

Where the right of tendering is personal, it may be made by a servant or stranger on behalf of the person.    (Bacon's Abr., title Tender, *a; Brown* v. *Dysinger*, 1 Rawle, 418 ; *Harding* v. *Davis*, 2 Carr & Payne, 70 ; *Chemenant* v. *Thornton*, Id. 51.) Upon principle and authority, the decision in the case of *Thorne*

v. *Hays*, that the Mayor could not make any valid redemption for the city, is wrong.

But should that case be in that respect considered law, we contend that the resolution passed by the Supervisors conferred upon the President competent authority.

No question can arise as to the title to the property. It was sold as the property of the city, which estops the plaintiff from saying it was not her property.

The Supervisors, as the legislative body of the corporation, had the right to empower the President to redeem. But it will be contended that the resolution was not passed in compliance with section sixty-eight of the Consolidation Act: first, in not making an appropriation ; second, it was not published five days. In reference to the first objection, it is sufficient that the question is one of power and not of appropriation. It made no difference with the plaintiff whose money the President used for the redemption. If he had the power to act for the city, he could do it with his own money, or that of any other person who would consent to such use ;. and being only a question of power or authority to act, a resolution authorizing action need not be published before final action.

It was not a resolution " providing for any specific improvement," nor " granting of any privilege," or involving the lease or other appropriation of public property, or the expenditure of public. moneys, or " laying tax or assessment, nor the imposing a new duty or penalty."

These cautions and restrictions are to guard against injury to the city, and are not intended to prevent the Supervisors from clothing the President with power to act in a given case for the benefit of the city by simple resolution.

The act of redemption was in good time, and in accordance with law.

Finally, a portion of the lots we represent are the lots known as Nos. 112 and 165 of the one hundred-vara survey of San Francisco ; both high land, and never subject to forced sale as city property. The sale of those lots was a nullity. (*Hart* v. *Burnett*, 15 Cal. 530.) As the city property generally is held in trust, and not subject to a forced sale, it would fall on the relator to show that

the property he asks a deed for was subject to such sale.    This he has not shown.

*Shattuck, Spencer & Reichert,* also for Appellant.

1. The redemption of real estate by the judgment debtor is but the payment of a debt, with the interest which the law has affixed thereto, and any one may make it who could make a legal tender.

2. A legal tender may be made by any friend of the debtor, as well as by the debtor himself.    (*Read* v. *Golding,* 2 Manl. & Sel. 86 ; *Harding* v. *Davis,* 2 Carr & P. 70 ; *Chemenant* v. *Thornton,* Id. 51; *Brown* v. *Dysinger,* 1 Rawle, 408 ; Bacon's Abr., Tender, *a ; Knox* v. *School District,* 2 Fairfield, 188.)

3. The authority conferred on President Burr by resolution was a sufficient power to act for the city.

4. It follows that the relator has no right to his deed, and that the judgment should be reversed.

5. The lot we represent—fifty-vara lot, No. 257—as represented on the official map, is high land, does not belong to the beach and water survey, was not subject to Sheriff's sale ; and said sale is a nullity.    (*Hart* v. *Burnett,* 15 Cal.)

*Heydenfeldt,* for Respondent.

I.  All land held by the city absolutely is leviable and subject to sale on execution.    (*Holladay* v. *Frisbie,* 15 Cal.)

Certain lands of the city of San Francisco are not within this rule, or are excepted from it, because they are not held absolutely, but are affected with a trust.    (*Hart* v. *Burnett,* 15 Cal. 530.)

It cannot be set up in this case that the lands sold by defendant are part of the trust estate ; the record does not disclose how or when they became the property of the city.    It may be that she acquired them by purchase absolutely, or probably they are water lots, and would then come within *Holladay* v. *Frisbie.*    If the defendant would bring them within the exception to the general rule of leviable property, he must plead and prove them to be within the exception.    *Prima facie* the relator is entitled to his deed.

Its execution would not affect the title if the sale was illegal, but

there is nothing in the record to show its illegality, and everything being regular, all presumption must go to sustain a judicial sale.

II. The redemption was clearly bad.  The sale was on the twenty-fifth of February; the last day for redemption was the twenty-fourth of August.  On the day after, Burr pays the money to the Sheriff.  The last day passed without redemption.  (*Price* v. *Whitman*, 8 Cal. 414.)

III.  The attempted redemption was not the act of the city and county of San Francisco:  1st, because the charter of the city and county did not *authorize* it, nor authorize the use or appropriation of any *money* of the city and county for that purpose.  (Statutes 1857, 218, 219, sec. 11, clauses 14 and 15; Statutes 1856, 174, secs. 96, 97, 98; 169, secs. 82, 83, 84.)  2d, because, if any authority for the use of any money of the city and county in the making of such redemption could be found in the charter, *the resolution* of the Board of Supervisors did not *appropriate any money* for that purpose, nor was it *passed in the manner* made necessary by the charter when, as in this case, the expenditure of five hundred dollars or more was involved.  (Statutes 1856, 164, sec. 68; 194, secs. 97, 98; Statutes 1857, 219, sec. 11, clauses 14 and 15.)  3d, because the money deposited with the Sheriff to effect the redemption was *not paid out of the treasury* of the city and county of San Francisco, nor was it *the money of the city and county*, and the relator was not bound to receive from strangers.  (*Phyfe* v. *Riley*, 15 Wend. 253; *People* v. *Beebe*, 1 Barb. 386.)

IV.  Because the charter and the resolution gave no sanction to the attempted redemption, and the money with which it was attempted not being that of the city and county, *the act of E. W. Burr*, though holding at the time the office of the *President of the Board of Supervisors*, was not the act of the city and county of San Francisco.  (*Thorne* v. *San Francisco*, 4 Cal. 145, 146, 147.)

V. The attempted redemption was invalid, because *no specific sum of money* was deposited with the Sheriff *for the relator Seale*, but a gross sum for him and two other persons, with whose purchases he had *no connection*, nor did the *notice* left with the Sheriff indicate in any manner whatever *how much* of the money was

deposited for Seale, nor how much for either or both of the *other purchasers.* (*Thorne* v. *San Francisco*, 4 Cal. 152, 153.)

*F. A. Fabens*, also for Respondent.

[Mr. Fabens' points, though filed in Nos. 3036 and 3038, are here given, because those two cases are made to depend on this, and a separate report of them is unnecessary.   REP.]

I. The attempted redemption was, from beginning to end, the act of E. W. Burr, and not that of the corporation, known as the city and county of San Francisco.

Said " Resolution," under which he acted, appears upon its face to have been both introduced and passed at a meeting of the Board of Supervisors of said city and county, called by the said Burr for that special purpose, and although purporting to authorize an act which the said Burr likewise testifies " involved the expenditure of more than five hundred dollars," to wit: the sum of seven hundred and ninety-five dollars; yet it was not, after its introduction into the Board, published, as is required in all such cases by the sixty-eighth section of the charter.   (Statutes of 1856, 164, sec. 68.)

Not only so, but the Board of Supervisors did not possess the power to authorize or direct the making of said redemption on behalf of the city and county of San Francisco, in the manner proved in this case, their power extending only to the authorizing of payment for the specific purposes and in the manner enumerated in the first fourteen subdivisions of the ninety-fifth section of the Consolidation Act, and to authorizing appropriation and application of any surplus moneys remaining in the treasury at the end of any fiscal year, and after all other lawful demands on the treasury had been satisfied as specified in the ninety-seventh section of said act.   Said Board is expressly prohibited from appropriating money in any other manner or for any other purposes than as specified. (Statutes 1856, 169, secs. 82, 84; 174, secs. 96, 97, 98; Statutes 1857, 118–220.)

Said resolution cannot be supported on the ground of its being an appropriation from the Urgent Necessity Fund, for no money is

appropriated nor any fund specified, and the fourteenth subdivision of said ninety-fifth section, amended in 1857 so as to create said Fund, expressly limits appropriations therefrom to cases when the amount thereof in each particular case shall have been previously authorized and fixed by the Board of Supervisors in the lawful exercise of their powers.

Nor is it the appropriation of any surplus remaining in the treasury at the end of the fiscal year, for such surplus must be ascertained to exist, and then its appropriation must necessarily specify that it is such and its amount. (Stat. 1857, 218, 220; Stat. 1856, 174, secs. 96, 97, 98.)

Moreover, said resolution not appropriating any money in the treasury nor specifying any amount to be expended, but professedly authorizing said Burr to redeem any and all property of said city and county heretofore sold under judgments against the city of San Francisco, without reference to the sum of money to be expended therein, and impliedly undertaking to render said city and county responsible for whatever sum might be so disbursed, was null and void as an attempt to contract a debt on behalf of said city and county, which is expressly prohibited by said Consolidation Act. (Stat. 1856, 174, secs. 97, 98.)

The money, likewise, delivered to the Sheriff, and by means of which said redemption was attempted, was the money of E. W. Burr, or of third parties, and not the money of said corporation known as the city and county of San Francisco, nor paid out of its treasury.

The resolution, therefore, conveying no authority to redeem said property, and the money with which such redemption was attempted not being that of said city and county of San Francisco, the act of E. W. Burr in depositing it, and a notice of redemption with said Sheriff, though holding at the time the office of President of the Board of Supervisors, was not the act of the city and county.

No question as to the title or amount of interest held by the city of San Francisco in the property in dispute, or its salability on execution, has been made in the Court below, and no such question can be raised in this Court. To do so would be virtually to try an action of ejectment upon this application for a · Sheriff's deed; in

other words, to decide upon the goodness of the relator's bargain in the purchase which he has made, and how much or how little he has acquired under it, when nothing of that kind· has been put in issue in the Court below, and when he has neither been called upon nor had the opportunity nor right to introduce any evidence upon those points.

This Court cannot judicially know, nor could the Court below, whether the interest of the city of San Francisco, which has been purchased by the relator, was derived by it under the former pueblo under purchase by said city since its organization or incorporation, or under any of the several Acts of the Legislature which have released and confirmed property to said city, or in what other way. Nor can, nor could either Court know whether this interest is in water property or in upland property; for many lots in San Francisco called water lots are much the larger portion of them dry land; and in like manner, of those called fifty and one hundred-vara lots, a great number are partially and not a few wholly covered with the waters of the bay of San Francisco.

The Court cannot know anything upon these subjects, except upon proof; and no proof has either been introduced, nor has there been an opportunity for any.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. concurring.

This was a proceeding, by mandamus, to compel the defendant, as Sheriff, to execute a deed to the relator for certain real estate sold under execution as the property of the city of San Francisco. The Court below granted the order, and from it this appeal is taken.

It is suggested that some of this property is upland lots, such as those the title of which was passed upon in *Hart* v. *Burnett*. If this be so, the city has no particular interest in disputing this deed so far as these lots are concerned; for the deed is, as to such property, a mere nullity, passing no title to the purchaser. But probably this is no answer to the application, if the Sheriff sold the property; since the value of the interest sold, or probably the leviable quality of the title, could not be inquired into in this proceeding, to which the city is not a party.

The main question arises upon the effect of certain proceedings taken by Mr. Burr, ostensibly on behalf of the Board of Supervisors, of which he was President, to redeem this property from the Sheriff's sale.

By resolution of the Board of Supervisors, Burr, as President, was authorized to redeem this property; and the proof is that the attempted redemption was in virtue of this order. He did make a tender of money with this avowed purpose. But to this tender some objections were made, which we propose briefly to consider. It is said that this resolution gave no authority, because made at a special meeting of this Board called for that particular purpose; and that the resolution, after its introduction, was not published, with the ayes and noes, in some city daily newspaper, at least five days before final action by the Board upon the same, as required by the sixty-eighth section of the Consolidation Act (Stats. of 1856, 164.) But the resolution makes and involves no expenditure of money over five hundred dollars on the part of the city. If it did, possibly the Act charging this sum upon the city and County Treasury, or upon the city and county, *might* be void; though it is not necessary so to decide. But not a word is said in this resolution in respect to a debt or having the effect to create a debt by the city and county, or to expend its money. On the contrary, the proof shows that the money tendered was furnished by other parties for this purpose. The Board did not undertake to contract a debt, or to expend the money of the city and county. By the seventy-fourth section of the Consolidation Act (Statutes of 1856, 165) it is provided, " that the Board of Supervisors shall have power to provide for the security, custody and administration of all public property in said city and county; " and it would be strange indeed if any government were constituted for a municipality, which had not the power to protect from destruction the title to its own property, when such protection did not cost the Government anything. It would be helpless and impotent, if such a power were denied the authorities. Whenever this money was furnished—it is immaterial by whom, or what the motive or purpose of those providing it—the Board had a right to order an act like this in the same way as it had the power to make any general order; and if this order did

not involve the expenditure of the city's money beyond the sum limited, the order was effectual.    It was good as an authority, though if money of the city and county were expended, it might not be good as a charge on the municipality ; but as no such charge was incurred, no legal objection exists to it.

It results, then, that Burr, as the President of the Board, for and in behalf of the city and county, had a right to make this redemption ; and the only question remaining is, whether he did make it in due and legal form.

It is insisted that this money was the money of Burr, and not of the city ; and therefore, the tender was of no force.    It is enough to say, in reply to this objection, that this question alone concerns Burr and the city, and that third persons have no right to inquire from what source a redemptioner gets the money he proposes to use to effect a redemption which he is entitled to make.

It is next objected that the amount is not sufficient.    It is claimed that some taxes were assessed and paid by the relator.    But it does not appear that these taxes were just charges on the property, or that they were legally assessed to the city, or to the true owner, nor, in fact, does it appear they were assessed at all, except from the receipts of the Tax Collector offered in evidence.    There is no finding of the facts of this case, as there should have been with the legal conclusions, but only a general conclusion stated by the Court that there was no legal redemption.    But the facts seem to be set out, and, from these facts, we are unable to see any legal proof that there were any taxes assessed and paid upon this property, which were a charge on the lots before or at the time of the redemption.

Judgment reversed and cause remanded.